TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:   415.268.7522

ADAM SEVELL (CA SBN 266428)
ASevell@mofo.com
KELSEY M. STRICKER (CA SBN 300955)
KStricker@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone:  213.892.5200
Facsimile:   213.892.5454

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA LAINER, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>UBER TECHNOLOGIES INC.,<br><br>     Defendant. | Case No. 15-CV-09925-BRO-MRW<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 16, 2016<br>Time:  1:30 p.m.<br><br>Hon. Beverly Reid O'Connell<br>Courtroom 14 |

la-1310253

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 16, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 14 of the U.S. District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, Defendant Uber Technologies, Inc. ("Uber") will, and hereby does, move the Court for an order to compel individual arbitration of Plaintiff Marisa Lainer's claims and dismiss this action with prejudice or, in the alternative, stay this action pending the completion of individual arbitration proceedings.[1]  This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 and upon the grounds that Plaintiff agreed to arbitrate her claims when she consented to the arbitration provision in Uber's Terms and Conditions.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declarations of Tipper Llaguno, Kyle Gabriel, and Tiffany Cheung, and all exhibits thereto, all documents in the Court's file, and on such other argument as may be presented to the Court.

///

///

///

---

[1] This motion satisfies Uber's obligation to respond to the First Amended Complaint [ECF No. 16] at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. App'x 604, 607 (10th Cir. 2011); *JS Barkats PLLC v. BE, Inc.*, 12 Civ. 6779 (JFK), 2013 WL 444919, *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Uber reserves the right to file a Rule 12(b) motion at a later time. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988).

la-1310253

1

1         This Motion is made following a conference of counsel pursuant to Local

2    Rule 7-3, which took place beginning on February 12, 2016 and continuing to

3    March 10-14, 2016.  (Declaration of Tiffany Cheung, at ¶ 2.)

4

5    Dated:  March 21, 2016                    MORRISON & FOERSTER LLP

6

7                                                     By:    /s/ Tiffany Cheung

8                                                            Tiffany Cheung

                                                     *Attorneys for Defendant*
9                                                    **UBER TECHNOLOGIES, INC.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION
CASE NO. 15-CV-09925-BRO-MRW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.     FACTUAL BACKGROUND ................................................................2

        A.    Plaintiff Voluntarily Registered for Uber's Services ...........................2

        B.    Plaintiff Consented to the Arbitration Agreement ...............................4

        C.    Plaintiff Agreed to Uber's Privacy Policy ...........................................6

        D.    Plaintiff Ignored the Arbitration Agreement and Filed This
              Putative Class Action Lawsuit. .............................................................6

III.    LEGAL STANDARD ............................................................................7

IV.     PLAINTIFF MUST INDIVIDUALLY ARBITRATE HER CLAIMS .........8

        A.    Uber's Terms and Conditions Involve Interstate Commerce ...............8

        B.    Plaintiff Entered into a Valid Agreement to Arbitrate ........................8

        C.    The Parties' Agreement Requires the Arbitrator to Decide All
              Issues of Arbitrability. ......................................................................10

        D.    The Arbitration Agreement Encompasses the Dispute at Issue..........11

        E.    The Arbitration Agreement Is Not Unconscionable ..........................13

V.      THE ACTION SHOULD BE DISMISSED OR STAYED PENDING
        THE COMPLETION OF INDIVIDUAL ARBITRATION........................15

VI.     CONCLUSION ..................................................................................17

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION
CASE NO. 15-cv-09925-BRO-MRW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*5381 Partners LLC v. Shareasale.com, Inc.,*
    No. 12-CV-4263 (JFB), 2013 WL 5328324
    (E.D.N.Y. Sept 23, 2013)............................................................................10

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,*
    855 F.2d 1470 (9th Cir. 1988)......................................................................1

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995)......................................................................................8

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011)................................................................................7, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986)....................................................................................11

*Belton v. Comcast Cable Holdings, LLC,*
    151 Cal. App. 4th 1224 (2007)....................................................................14

*Binder v. Aetna Life Ins. Co.,*
    75 Cal. App. 4th 832 (1999).........................................................................9

*Bosinger v. Belden CDT, Inc.,*
    358 F. App'x 812 (9th Cir. 2009)................................................................14

*Brown v. DirecTV, LLC,*
    No. CV 12-08382 DMG (Ex), 2013 WL 3273811
    (C.D. Cal. June 26, 2013).............................................................................13

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991).......................................................................................9

*Cayanan v. Citi Holdings, Inc.,*
    928 F. Supp. 2d 1182 (S.D. Cal. 2013) .......................................................13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000).......................................................................7

*Clarium Capital Mgmt. LLC v. Choudhury,*
    No. 08-5157SBA, 2009 WL 331588 (N.D. Cal. Feb. 11, 2009) ....................11

*Crawford v. Beachbody, LLC,*
    No. 14-CV-1583 GPC, 2014 WL 6606563
    (S.D. Cal. Nov. 5, 2014) ...............................................................................10

## <u>TABLE OF AUTHORITIES</u>
### (cont'd)

**Page(s)**

*Crook v. Wyndham Vacation Ownership, Inc.*,
 No. 13-CV-03669-WHO, 2013 WL 6039399
 (N.D. Cal. Nov. 8, 2013)...................................................................11, 15

*Dang v. Samsung Elecs. Co.*,
 No. 14-CV-00530 LHK, 2015 WL 4735520
 (N.D. Cal. Aug. 10, 2015)........................................................................16

*Dauod v. Ameriprise Fin. Servs., Inc.*,
 No. 10-CV-00302 CJC, 2011 WL 6961586
 (C.D. Cal. Oct. 12, 2011)..........................................................................16

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985).................................................................................15

*Delgado v. Progress Fin. Co.*,
 No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282
 (E.D. Cal. May 1, 2014).......................................................................12, 13

*Dream Theater, Inc. v. Dream Theater*,
 124 Cal. App. 4th 547 (2004)...................................................................11

*Estrada v. CleanNet USA, Inc.*,
 No. C 14-01785 JSW, 2015 WL 833701
 (N.D. Cal. Feb. 24, 2015).........................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)...................................................................................8

*Fischer v. Rent-A-Center, Inc.*,
 No.14-cv-00918-MCE-AC, 2014 WL 3729553
 (E.D. Cal. July 24, 2014) .........................................................................12

*Fteja v. Facebook, Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ......................................................10

*Garcia v. Enter. Holdings, Inc.*,
 78 F. Supp. 3d 1125 (N.D. Cal. 2015)......................................................10

*Graf v. Match.com, LLC*,
 No. CV-15-3911 PA, 2015 WL 4263957
 (C.D. Cal. July 10, 2015)..........................................................................16

*Green Tree Fin. Corp.-Ala. v. Randolph*,
 531 U.S. 79 (2000).....................................................................................7

<u>**TABLE OF AUTHORITIES**</u>
**(cont'd)**

Page(s)

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   No. 04-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011)..........................12

*JS Barkats PLLC v. BE, Inc.,*
   12 Civ. 6779 (JFK), 2013 WL 444919
   (S.D.N.Y. Feb. 6, 2013) ...........................................................................1

*Jones v. Wells Fargo Bank,*
   112 Cal. App. 4th 1527 (2003)...................................................................14

*Koyoc v. Progress Fin. Co.,*
   No. CV 13-09165-RSWL, 2014 WL 1878903
   (C.D. Cal. May 9, 2014)............................................................................12

*Kramer v. Toyota Motor Corp.,*
   705 F.3d 1122 (9th Cir. 2013)......................................................................8

*Lamkin v. Morinda Props. Weight Parcel, LLC,*
   440 Fed. App'x 604 (10th Cir. 2011) ...........................................................1

*Lewis v. UBS Fin. Servs., Inc.,*
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......................................................16

*Luchini v. Carmax, Inc.,*
   No. CV F 12-0417 LJO DLB, 2012 WL 2995483
   (E.D. Cal. July 23, 2012) ..........................................................................17

*McNamara v. Royal Bank of Scotland Group, PLC,*
   No. 11-cv-2137-L(WVG), 2012 WL 5392181
   (S.D. Cal. Nov. 5, 2012) ...........................................................................13

*Mendoza v. Ad Astra Recovery Servs. Inc.,*
   No. 2:13-cv-06922-CAS(JCGx), 2014 WL 47777
   (C.D. Cal. Jan. 6, 2014) ............................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.,*
   473 U.S. 614 (1985).................................................................................11

*Morris v. Redwood Empire Bancorp,*
   128 Cal. App. 4th 1305 (2005)...................................................................14

*Mortensen v. Bresnan Commc'ns LLC,*
   722 F.3d 1151 (9th Cir. 2013).......................................................................7

*Nguyen v. Barnes & Noble Inc.,*
   763 F.3d 1171 (9th Cir. 2014).......................................................................8

1
2

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

3
4

*Nicosia v. Amazon.com, Inc.,*
  No. 14-CV-4513 (SLT) (MDG), 2015 WL 500180
  (E.D.N.Y. Feb. 4, 2015)................................................................9

5
6

*Oracle Am. Inc. v. Myriad Grp., A.G.,*
  724 F.3d 1069 (9th Cir. 2013)...............................................10, 11

7
8

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev., LLC,*
  55 Cal. 4th 223 (2012) .......................................................13, 14, 15

9

*Rent-A-Center W., Inc. v. Jackson,*
  561 U.S. 63 (2010)..................................................................13

10
11

*Rep. of Nicar. v. Standard Fruit Co.,*
  937 F.2d 469 (9th Cir. 1991).....................................................16

12

*Sanchez v. Valencia Holding Co., LLC,*
  61 Cal. 4th 899 (2015) ...............................................................14

13
14

*Sheffer v. Samsung Telecomms. Am., LLC,*
  No. CV-13-3466 GW, 2014 WL 792124 (C.D. Cal. Feb. 6, 2014)..................16

15
16

*Sherman v. RMH, LLC,*
  No. 13cv1986-WQH-WMc, 2014 WL 30318
  (S.D. Cal. Jan. 2, 2014)..........................................................12

17
18

*Starke v. Gilt Groupe, Inc.,*
  No. 13-CIV-5497 (CLS), 2014 WL 1652225
  (S.D.N.Y. Apr. 24, 2014) .........................................................9

19
20

*Swift v. Zynga Game Network, Inc.,*
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................9

21
22

*Ulbrich v. Overstock.com, Inc.,*
  887 F. Supp. 2d 924 (N.D. Cal. 2012)..........................................15

23

*United States v. Sutcliffe,*
  505 F.3d 944 (9th Cir. 2007)...................................................8

24
25

*Van Patten v. Vertical Fitness Grp., LLC,*
  22 F. Supp. 3d 1069 (S.D. Cal. 2014) .........................................13

26
27

*Windsor Mills, Inc. v. Collins & Aikman Corp.,*
  25 Cal. App. 3d 987 (1972).....................................................9

28

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

STATUTES

9 U.S.C.
   § 2 .................................................................................................. 7
   § 3 ................................................................................................ 17
47 U.S.C. § 227 ................................................................................. 1

OTHER AUTHORITIES

AAA Commercial Arbitration Rules and Mediation Procedures ........................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Marisa Lainer cannot unilaterally repudiate her binding contract with Uber.  When she created an Uber account and accessed Uber's services—which she has continued to use even after filing this action—Ms. Lainer expressly agreed to arbitrate the claims she asserts here on an individual basis.  Filing this putative class action in federal court violates her binding agreement, and this action cannot proceed.

In January 2015, Plaintiff registered to use Uber's services by creating an account using Uber's mobile application ("Uber App").  As part of this registration process, Plaintiff agreed to be bound by Uber's Terms and Conditions and Privacy Policy.  The Terms and Conditions include a clear and conspicuous arbitration provision ("Arbitration Agreement").  Under the Arbitration Agreement, Plaintiff: (i) agreed to arbitrate "any dispute, claim or controversy arising out of or relating to the [Terms and Conditions, including the Privacy Policy] or the breach, termination, enforcement, interpretation or validity thereof or the use of Uber's services"; and (ii) waived "the right to . . . participate as a plaintiff or class in any purported class action[.]"  The Terms and Conditions and Privacy Policy specified that Uber may communicate with Plaintiff in a variety of ways, including by SMS message, and informed Plaintiff that Uber may use her personal information—including her mobile phone number—to, among other things, communicate with her in connection with improving its services and providing special offers.

Ignoring her Arbitration Agreement, Plaintiff has now filed a class action in this Court, alleging that Uber violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by sending her two "unsolicited text messages" that were "advertisements and/or promotional offers[.]"  [ECF No. 16, ¶¶ 9, 25.]  Uber contests this claim, but the Court need not (and should not) resolve the issue.  The two alleged text messages fall squarely within the scope of communications

Plaintiff consented to receive when she registered to use Uber's services and availed herself of those services.  Although Plaintiff may attempt to challenge these contractual provisions, that dispute must be arbitrated because it unequivocally "arises out of or relates to" the Terms and Conditions and Privacy Policy.

Binding U.S. Supreme Court and Ninth Circuit law require the enforcement of the Arbitration Agreement.  The Court should grant Uber's motion and compel arbitration of Plaintiff's claims on an individual basis.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Voluntarily Registered for Uber's Services.

Uber's technology platform allows users to request transportation services from their smartphones via the Uber App.  (Declaration of Kyle Gabriel ("Gabriel Decl."), ¶ 3.)  Requests are transmitted to independent transportation providers in the area who are available to receive transportation requests.  (*Id.*)  Before users can take advantage of Uber's services, they register with Uber by creating an Uber account.  (*Id.* at ¶ 4.)

Plaintiff used her iPhone to create an Uber account using the Uber App on January 3, 2015.  (*Id.* at ¶ 5.)  At that time, the iPhone registration process involved three basic steps, each of which was confined to a single screen.  (*Id.* at ¶¶ 6, 7, Exh. A.)  In the "Create An Account" screen, prospective registrants submitted their email address, mobile phone number, and a chosen password.  (*Id.* at ¶ 7a.)  The registrant would then need to hit the "next" button, lit at the top right of the screen, to move to the next step.  (*Id.*)  In the "Create A Profile" screen, registrants entered their first and last names for their user profile.  (*Id.* at ¶ 7b.)  Once again, the prospective registrant would then need to hit the "next" button at the top right of the screen to move to the next step.  (*Id.*)

In the "Link Payment" screen, which was the final step, registrants were required to enter their credit card or PayPal information.  (*Id.* at ¶ 7c.)  When the registrant moved his/her cursor to the credit card information field, as Ms. Lainer

1   would have done, a numerical keyboard would appear.  (*Id.*)  On the same screen

2   registrants were also informed that: "By creating an Uber account, you agree to the

3   Terms & Conditions and Privacy Policy."  The words "Terms & Conditions and

4   Privacy Policy" were called out in bolded text and distinguished by a rectangular

5   box that corresponded to a clickable button.  (*Id.*)



22   (*Id.* at Exh. A.)

23       When the "Terms & Conditions and Privacy Policy" button was clicked, the

24   registrant was taken to a screen that contained additional clickable buttons, one

25   entitled "Terms & Conditions," and another entitled "Privacy Policy," each of

26   which displayed a copy of the respective terms when clicked.  (*Id.* at ¶ 7c.)  To

27   complete the Uber App registration process and create an Uber account, registrants

28   then clicked the "DONE" button.  (*Id.*)

### B.     Plaintiff Consented to the Arbitration Agreement.

Plaintiff unequivocally accepted and is bound by Uber's Terms and Conditions.  (*See* Declaration of Tipper Llaguno ("Llaguno Decl."), Exh. A.) Plaintiff completed all steps necessary to register for Uber's services, including voluntarily providing her mobile phone number to Uber and affirmatively clicking "DONE" to confirm her agreement to the Terms & Conditions and Privacy Policy. (Gabriel Decl. at ¶¶ 5, 7.)  Pursuant to its terms, Uber has provided Plaintiff with access to its services, and Plaintiff has accessed those services and taken trips on more than twenty occasions since she signed up as an Uber user in January 2015. (*Id.* at ¶ 5.)  Notably, Plaintiff has accessed these services and taken trips on several recent occasions even *after* filing her complaint on December 28, 2015, including after her counsel was put on notice of her agreement to arbitrate.  (*Id.*)

The first section of the applicable Terms and Conditions states that a registrant's "access and use of the Services constitutes [his/her] agreement to be bound by these Terms" and "establishes a contractual relationship between the registrant and Uber."  (Llaguno Decl., Exh. A at § 1.)  This section also incorporates Uber's Privacy Policy into the Terms and Conditions, and includes a hyperlink to that Policy.  (*Id.*)

The sixth section, titled "Dispute Resolution," states in relevant part:

> **You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services** (collectively, *"Disputes"*) **will be settled by binding arbitration between you and Uber**, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding.**  Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more

than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

(*Id.* at p. 8, § 6 [emphases added].)  The provision also states that the American Arbitration Association ("AAA") will oversee any dispute, and explains how users can review the applicable arbitration rules:

The arbitration will be administered by the American Arbitration Association (*"AAA"*) in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the *"AAA Rules"*) then in effect, except as modified by this "Dispute Resolution" section.  (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.) The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

(*Id.*)

The Arbitration Agreement permits users to arbitrate in their home counties, and allows for recovery of attorneys' fees only by users, not Uber:

*Arbitration Location and Procedure.* Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside.  . . .

*Arbitrator's Decision.*  . . .  If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevails in arbitration.

(*Id.*)  Uber also accepts the burden of paying ***all*** filing, administrative and arbitrator fees for non-frivolous claims:

*Fees.*  Your responsibility to pay any AAA filing, administrator and arbitrator fees will be solely as set forth in the AAA Rules.  However, if your claim for damages does not exceed $75,000, Uber will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose[.]

(*Id.*)  The Arbitration Agreement clearly and conspicuously delineates the waivers of the parties, including the waiver of any right to prosecute a class or representative action, and the numerous protections favorable to the user.  (*Id.*)

## C.    Plaintiff Agreed to Uber's Privacy Policy.

By creating an Uber account, Plaintiff also agreed to the Privacy Policy, which is incorporated into the applicable Terms and Conditions and explains how Uber uses the personal information it collects.  (Llaguno Decl., Exh. A, § 1 ("Our collection and use of personal information in connection with the Services is as provided in Uber's Privacy Policy located at [hyperlinked URL]."); Exh. B, preamble ("This Privacy Policy is incorporated by reference into the applicable Terms and Conditions.").)  The Privacy Policy specifies that Uber "will communicate with you by email, telephone, or SMS or text message, in accordance with your wishes" and "may use your Personal Information . . . that we collect about you:

> i.  To provide you with information or services or process transactions that you have requested or agreed to receive including to send you electronic newsletters, or to provide you with special offers or promotional materials . . . on behalf of us or third parties. . . .
>
> iii.  To improve the Services or our services, to customize your experience with the Services, or to serve you specific content that is most relevant to you.
>
> . . .
>
> iv. To enable you to participate in a variety of the Services' features . . .
>
> v. To contact you with regard to your use of the Services[.]

(Exh. B, pp. 15-16, § 2.)  It also contains a detailed explanation about how users can cancel or modify the communications they receive from Uber.  (*Id.* at § 8.)

## D.    Plaintiff Ignored the Arbitration Agreement and Filed This Putative Class Action Lawsuit.

Plaintiff alleges that Uber violated the Telephone Consumer Protection Act ("TCPA") by sending her two "unsolicited text messages," including "advertisements and/or promotional offers, via text message" to Plaintiff's cellular

1   telephone.  [ECF No. 16, ¶¶ 9, 25.]  This is *precisely* the type of dispute

2   encompassed by the Arbitration Agreement.  (Llaguno Decl., Exh. A, § 6.)  Despite

3   consenting to the Arbitration Agreement and binding class action waiver, Plaintiff

4   filed this putative class action lawsuit in violation of the Arbitration Agreement.

5   Although Uber has apprised Plaintiff of the enforceability and applicability of the

6   Arbitration Agreement, Plaintiff has elected to proceed with her case (but continues

7   to use Uber's services).  (Declaration of Tiffany Cheung, at ¶ 2; Gabriel Decl. at

8   ¶ 5.)

9   ## III.   LEGAL STANDARD

10          The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring

11   arbitration, and requires that arbitration agreements be rigorously enforced.  *See*

12   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place

13   arbitration agreements on an equal footing with other contracts").  "[T]he FAA's

14   purpose is to give preference (instead of mere equality) to arbitration provisions."

15   *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013).  "As

16   arbitration is favored, those parties challenging the enforceability of an arbitration

17   agreement bear the burden of proving that the provision is unenforceable."  *Id.* at

18   1157 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 91-92 (2000)).

19          The FAA provides that contractual arbitration agreements "shall be valid,

20   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

21   the revocation of any contract."  9 U.S.C. § 2.  A court *must* compel arbitration if:

22   the transaction involves interstate commerce and (1) a written arbitration agreement

23   exists; and (2) the agreement encompasses the dispute at issue.  *Chiron Corp. v.*

24   *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

25   ## IV.   PLAINTIFF MUST INDIVIDUALLY ARBITRATE HER CLAIMS

26   ### A.   Uber's Terms and Conditions Involve Interstate Commerce.

27          Both the express terms of the Arbitration Agreement and the nature of the

28   relationship between the parties confirm that the FAA governs.  The FAA "governs

the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase "affecting commerce"; the FAA should be applied with the full reach of Congress' powers under the Commerce Clause).

When registering to use Uber's services in January 2015, Plaintiff agreed to Uber's Terms and Conditions and Privacy Policy.  (Gabriel Decl., ¶¶ 5-7.)  The Terms and Conditions grant users a limited authorization to use Uber's online platform.  (Llaguno Decl., Exh. A, § 2.)  Where, as here, the underlying transactions involve the use of Internet technologies to transmit user requests across a network of independent drivers in over 100 cities across the United States, the "involving commerce" requirement has been met.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce") (internal quotation marks omitted).  Indeed, Plaintiff alleges that this Court's subject matter jurisdiction is based on the fact that Uber's services are provided to customers across the country, therefore implicating interstate commerce and the FAA.  [ECF No. 16, ¶ 2.]

### B.   Plaintiff Entered into a Valid Agreement to Arbitrate.

In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).   Here, the Terms and Conditions are "governed by and construed in accordance with the laws of the State of California, U.S.A."  (Llaguno Decl., Exh. A, § 7.)

Applying California law, mutual assent to contract "may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co.*, 75 Cal.

App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). Thus, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972) (citations omitted).

Customers are placed on notice of the terms to which they are assenting where they are provided an opportunity to review and confirm agreement with terms of service. Indeed, courts routinely enforce online agreements where users click a button indicating they consent to hyperlinked terms of service. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (user bound by arbitration provision because she was told that, "By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service" and the user proceeded)[2]; *see also Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513 (SLT) (MDG), 2015 WL 500180, at *5 (E.D.N.Y. Feb. 4, 2015) (online customer was bound by contract terms where website stated that, "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," which were reachable by a hyperlink); *Starke v. Gilt Groupe, Inc.*, No. 13-CIV-5497 (CLS), 2014 WL 1652225, *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration provision in hyperlinked Terms of Use; plaintiff's "decision to click the 'Shop Now' button represents his assent to [the Terms].").[3]

This case is no different. The Uber registration process that Plaintiff

---

[2] It is sufficient to "requir[e] a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button" as long as the user has "access to the terms of service." *Id.* at 912.

[3] *See also Crawford v. Beachbody, LLC*, No. 14-CV-1583 GPC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263 (JFB), 2013 WL 5328324, at *4 (E.D.N.Y. Sept 23, 2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012).

completed consists of three basic steps, each confined to a single screen with specific fields to complete.  (Gabriel Decl., ¶¶ 6, 7, Exh. A.)  To complete the registration process and create an Uber account, Plaintiff affirmatively and voluntarily provided Uber with her mobile phone number and clicked the "DONE" button, which appeared above a clickable button stating that "[b]y creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." (*Id.* at ¶ 7c, Exh. A.)  The phrase "Terms & Conditions and Privacy Policy" was highlighted and hyperlinked to full copies of each document, giving Plaintiff an opportunity to review those terms.  (*Id.*)  Plaintiff was therefore on notice that by creating her Uber account, she was consenting to the Arbitration Agreement.  Accordingly, Plaintiff is bound by the terms of this Agreement whether she actually read them or not.  *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (in the context of online transactions, "the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put a 'reasonably prudent user on notice of the terms of the contract.'").

### C. The Parties' Agreement Requires the Arbitrator to Decide All Issues of Arbitrability.

When parties "clearly and unmistakably" demonstrate an intent to have the arbitrator decide issues of arbitrability, those issues should be referred to the arbitrator.  *Oracle Am. Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  In those circumstances, the court's inquiry is limited to whether the assertion of arbitrability is "wholly groundless." *Clarium Capital Mgmt. LLC v. Choudhury*, No. 08-5157SBA, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009).

The Arbitration Agreement expressly incorporates the AAA Commercial Arbitration Rules.[4]  (Llaguno Decl., Exh. A at § 6.)  This is "clear and

_____

[4] "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the

unmistakable" evidence that the parties agreed to delegate gateway questions of arbitrability to the arbitrator.  *See, e.g.*, *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2013 WL 6039399, at *6 (N.D. Cal. Nov. 8, 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability") (citing *Oracle*, 724 F.3d at 1074); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation of AAA Rules deemed "clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable.")  Any disputes regarding arbitrability must be resolved by the arbitrator.

### D.    The Arbitration Agreement Encompasses the Dispute at Issue.

Given that the Arbitration Agreement delegates questions of arbitrability to the arbitrator, Uber must simply have a basis for demanding arbitration that is not "wholly groundless." *Clarium*, 2009 WL 331588, at *5.  The FAA requires that courts compel arbitration "unless it may be said with ***positive assurance*** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The Arbitration Agreement broadly defines the scope of arbitrable disputes to include "**any dispute, claim or controversy arising out of or relating to** these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services[.]"  (Llaguno Decl., Exh. A at § 6 [emphasis added].)  "The

---

arbitration agreement or to the arbitrability of any claim[.]" AAA COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES at R-7(a) (https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased) (effective October 1, 2013; last accessed March 21, 2016).

use of the 'relat[ing] to' language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract." *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 04-1827 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("the language 'related to' must be read broadly" to encompass "matters that, while not arising directly under the contractual relationship, are nevertheless related to it."). In the face of a contract with "relating to" language, "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration provision." *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014) (citation omitted).

In the context of TCPA cases, courts broadly construe arbitration clauses that include "arising out of or relating to" language and routinely compel arbitration where the alleged TCPA violation is intertwined with the underlying contract. *See id.* at *6 (rejecting plaintiff's argument that TCPA claim was independent from the contract because it necessarily required contractual interpretation); *Fischer v. Rent-A-Center, Inc.*, No.14-cv-00918-MCE-AC, 2014 WL 3729553, at *4-5 (E.D. Cal. July 24, 2014) (compelling arbitration of TCPA claim based on communications regarding payments on furniture rental contract); *Sherman v. RMH, LLC*, No. 13cv1986-WQH-WMc, 2014 WL 30318, at *8-9 (S.D. Cal. Jan. 2, 2014) (compelling arbitration of TCPA claim based on telephone call about status review of prior vehicle purchase through an installment sale contract).[5]

---

[5] *See also Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013); *Mendoza v. Ad Astra Recovery Servs. Inc.*, No. 2:13-cv-06922-CAS(JCGx), 2014 WL 47777, at *3 (C.D. Cal. Jan. 6, 2014); *Brown v. DirecTV, LLC*, No. CV 12-08382 DMG (Ex), 2013 WL 3273811, at *4-6 (C.D. Cal. June 26, 2013); *McNamara v. Royal Bank of Scotland Group, PLC*, No. 11-cv-2137-L(WVG), 2012 WL 5392181, at *6-7 (S.D. Cal. Nov. 5, 2012).

1   The Arbitration Agreement leaves no doubt that Plaintiff's claims fall
2   squarely within the agreement.  Plaintiff's claims are based on the allegation that
3   the two accused text messages were sent without Plaintiff's consent.  [ECF No. 16,
4   ¶¶ 21, 25.]  But the types of communications that Plaintiff consented to receiving
5   from Uber were addressed in the binding agreement between Plaintiff and Uber,
6   and included precisely the type of messages alleged to be at issue here.[6]  (Llaguno
7   Decl., Exh. A, §§ 1, 6; Exh. B, § 2.)  Plaintiff's claims are therefore encompassed
8   by the Arbitration Agreement.  *See Delgado*, 2014 WL 1756282, at *5-6
9   (compelling arbitration where agreement included broad language and disclosed
10  methods defendant might use to communicate with plaintiff about his account).

11  **E.     The Arbitration Agreement Is Not Unconscionable.**

12  The party opposing arbitration bears the burden of proving unconscionability.
13  *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev., LLC*, 55 Cal. 4th 223, 236
14  (2012).  The FAC does not allege that the Arbitration Agreement is unenforceable,
15  which should end the inquiry, but to the extent the Court considers the issue, there
16  is no unconscionability here.

17  The Court's analysis is limited to whether the arbitration provision is itself
18  unconscionable.  *See Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010)
19  ("[A] party's challenge to another provision of the contract, or to the contract as a
20  whole, does not prevent a court from enforcing a specific agreement to arbitrate.").
21  Moreover, "a contract provision is unenforceable due to unconscionability only if it
22  is both procedurally and substantively unconscionable."  *Bosinger v. Belden CDT,*
23  *Inc.*, 358 F. App'x 812, 814 (9th Cir. 2009) (citation omitted).

24

25  [6] Plaintiff's voluntary provision of her cell phone number to Uber and her
26  express contractual consent to receive the text message at issue also preclude her
    TCPA claim on the merits.  *See e.g., Van Patten v. Vertical Fitness Grp., LLC*, 22
27  F. Supp. 3d 1069, 1073 (S.D. Cal. 2014).  This defense is appropriately resolved by
    the arbitrator or a small claims court, as required by Uber's agreement with
28  Plaintiff.

The Arbitration Agreement is not procedurally unconscionable because (1) it is not oppressive and (2) Plaintiff was not surprised by it.  *Pinnacle Museum*, 55 Cal. 4th at 246.  Plaintiff had a meaningful choice whether to accept the Terms and Conditions and take advantage of Uber's platform—she could have easily declined those terms and used an alternative means of requesting transportation.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007) ("The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice.").

Nor did the provision "surprise" Plaintiff.  The Terms and Conditions containing the Arbitration Agreement were prominently called out and hyperlinked on the account sign-up page and were readily accessible to Plaintiff.  (Gabriel Decl., ¶ 7c, Exh. A.)  Uber "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015).  Even so, the Arbitration Agreement is written in plain English and is conspicuously displayed under the bolded heading "**Dispute Resolution**"—not "hidden within a prolix printed form."  (Llaguno Decl., Exh. A, § 6; *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003); *see also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005) ("a clear heading in a contract may refute a claim of surprise"); *Estrada v. CleanNet USA, Inc.*, No. C 14-01785 JSW, 2015 WL 833701, at *3 (N.D. Cal. Feb. 24, 2015) (compelling arbitration; finding, *at most*, only a "minimal amount of procedural unconscionability" where "dispute resolution provisions were clearly labeled, with bolded, capitalized section[s]").)  Under this heading, the Terms clearly state: "You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding."  (Llaguno Decl., Exh. A, § 6.)

Nor is the Arbitration Agreement substantively unconscionable.  To prove

14

substantive unconscionability, Plaintiff must show that the arbitration clause is "so one-sided as to shock the conscience." *Pinnacle,* 55 Cal. 4th at 246 (internal quotations omitted). Far from being one-sided, the Arbitration Agreement is bilateral and safeguards Plaintiff's ability to pursue a small claims action or an individual arbitration. Uber has agreed to pay all of Plaintiff's "filing, administrative and arbitrator fees" for arbitration of non-frivolous claims under $75,000, and statutory damages for Plaintiff's claims based on two text messages cannot exceed $3,000. (Llaguno Decl., Exh. A at § 6.) Plaintiff can also recover attorneys' fees and expenses if she prevails in arbitration; Uber has waived its corresponding right. (*Id.*) And, Plaintiff is not faced with significant travel expenses because Uber has agreed to conduct the arbitration in Plaintiff's home county. (*Id.*) If Plaintiff prefers small claims court, she retains her right to choose that forum. (*Id.*) These provisions defeat any claimed unconscionability. *See Ulbrich v. Overstock.com, Inc.,* 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (rejecting unconscionability challenge even where arbitration provision required individuals to share in costs of arbitration, set the arbitration out-of-state, and lacked mutuality in the remedies available to the parties); *see also Crook,* 2013 WL 6039399, at *5 (no unconscionability even where the provision required the parties to share fees and costs of arbitration and required travel to an arbitration forum outside plaintiffs' home county).

## V. THE ACTION SHOULD BE DISMISSED OR STAYED PENDING THE COMPLETION OF INDIVIDUAL ARBITRATION.

Courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Rep. of Nicar. v. Standard Fruit Co.,* 937 F.2d 469, 475 (9th Cir. 1991) (citation omitted). Here, Plaintiff entered a valid and binding Arbitration Agreement on January 3, 2015, and this Agreement covers

1  Plaintiff's claims.  Binding precedent compels the Court to direct Plaintiff to
2  resolve this dispute in individual arbitration.

3  Since Plaintiff must arbitrate her claims or pursue them in small claims court,
4  the Court may dismiss the entire case, including her putative class claims.  *See*
5  *Lewis v. UBS Fin. Servs., Inc.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011).
6  Dismissal of claims brought on behalf of a putative class is proper upon granting a
7  motion to compel arbitration with respect to the named plaintiff.  *See Sheffer v.*
8  *Samsung Telecomms. Am., LLC*, No. CV-13-3466 GW (AJWx), 2014 WL 792124,
9  at *1 (C.D. Cal. Feb. 6, 2014) ("Because the arbitration agreement calls for
10 individual arbitration of all of Plaintiff's claims in this action, Plaintiff's class-
11 based claims are dismissed with prejudice."); *Dang v. Samsung Elecs. Co.*, No. 14-
12 CV-00530 LHK, 2015 WL 4735520, at *11 (N.D. Cal. Aug. 10, 2015) (dismissal is
13 appropriate where "the arbitration clause [is] broad enough to bar all of the
14 plaintiff's claims"); *Graf v. Match.com, LLC*, No. CV-15-3911 PA (MRWx), 2015
15 WL 4263957, at *6 (C.D. Cal. July 10, 2015) ("Given that all of Plaintiff's claims
16 are subject to arbitration, this [putative class] action is dismissed.") (citation
17 omitted).

18 Dismissal of putative class claims is also proper because Plaintiff agreed to
19 the class action waiver in Uber's Terms and Conditions.  *See Concepcion*, 563 U.S.
20 at 344, 352 (enforcing class action waiver in defendant's arbitration agreement
21 because the "principal purpose" of the FAA is to "ensur[e] that private arbitration
22 agreements are enforced according to their terms"); *Dauod v. Ameriprise Fin.*
23 *Servs., Inc.*, No. 10-CV-00302 CJC (MANx), 2011 WL 6961586, at *6 (C.D. Cal.
24 Oct. 12, 2011) (holding class action waiver was enforceable and dismissing action
25 where individual claims were subject to arbitration).  Because all of plaintiff's
26 claims must be resolved through individual, binding arbitration, this case should be
27 dismissed.   In the alternative, the Court may stay this case pending the results of
28 individual arbitration.  *See* 9 U.S.C. § 3; *Luchini v. Carmax, Inc.*, No. CV F 12-

0417 LJO DLB, 2012 WL 2995483, at *15 (E.D. Cal. July 23, 2012) ("[A] court can properly stay a suit before it if *any* issue in the suit is arbitrable[.]") (citation omitted).

**VI. CONCLUSION**

Plaintiff must individually arbitrate all of her present claims against Uber because she voluntarily entered into an enforceable Arbitration Agreement covering the dispute at issue.  Alternatively, she may pursue her claims in small claims court. Uber respectfully requests that the Court grant its motion to compel arbitration and dismiss, or in the alternative, stay, Plaintiff's claims.


Dated:  March 21, 2016                MORRISON & FOERSTER LLP


                                      By:     /s/ Tiffany Cheung
                                              Tiffany Cheung

                                      *Attorneys for Defendant*
                                      **UBER TECHNOLOGIES, INC.**

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that on the 21st day of March, 2016, the

3   foregoing document was filed electronically on the CM/ECF system, which caused

4   all CM/ECF participants to be served by electronic means.

5

6   Dated:  March 21, 2016            MORRISON & FOERSTER LLP

7

8                            By:    _____/s/ Tiffany Cheung_____
                                          Tiffany Cheung
9
                                    ***Attorneys for Defendant***
10                                  **UBER TECHNOLOGIES, INC.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28