**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Thomas E. Wheeler (308789)
Todd M. Friedman (216752)
Adrian R. Bacon (280332)
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
twheeler@toddflaw.com
tfriedman@attorneysforconsumers.com
abacon@attorneysforconsumers.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA LAINER, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-09925-BRO-MRW |
| Plaintiff, | **OPPOSITION TO MOTION TO COMPEL ARBITRATION, AND IN THE ALTERNATIVE, TO DISMISS OR STAY THE CASE** |
| vs. | |
| UBER TECHNOLOGIES INC., | **Hon. Beverly Reid O'Connell** |
| Defendant. | **Date: May 16, 2016** |
| | **Time: 1:30 P.M.** |

<u>T<small>ABLE OF</small> C<small>ONTENTS</small></u>

I. **Introduction**................................................................................ 1

II. **Facts** ......................................................................................... 2

   A. **Plaintiff Received Texts Offering Employment** ................................. 2

   **Plaintiff Agreed To Uber's Terms Of Use And Privacy Policy As A**

   **User and Consumer, Not As A Driver**........................................... 3

      1. Services as Defined in the Terms of Use........................................ 4

      2. Services as Defined and Used in the Privacy Policy ........................ 5

III. **The Court Should Deny Defendant's Motion Compel Arbitration** .......... 6

   A. **Legal Standard** ................................................................. 6

   B. **The Services Agreed To By Plaintiff In the Uber Terms Of Use**

   **And Privacy Policy Do Not Touch The Employment Recruitment**

   **Text Messages At Issue In This Matter** ...................................... 8

      1.The "Related To" Language Cannot Be Construed To Cover

      ALL Communications From Uber ......................................... 9

         i. Uber's Texts Recruiting Plaintiff to Apply for

         Employment Are Completely Unrelated to the

         Arbitration Clause in the Consumer Terms of Use............... 11

         ii. The TCPA Debt Collection Cases cited by

         Defendant are completely distinguishable........................... 13

IV. **Conclusion** ................................................................ 15

1

## TABLE OF AUTHORITIES

2

### CASES

3   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................. 7

4   *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S.

5       643 (1986)................................................................................................ 7

6   *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) ........................... 8

7   *Crooks v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-

8       WHO, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013) ....................... 8

9   *Dean Witter Reynolds, Inc. v. Byard*, 470 U.S. 213 (1985)...................... 7

10  *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS, 2014

11      WL 1756282 (E.D. Cal. May 1, 2014)...................................11, 13, 14

12  *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).................................... 7

13  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ............. 7

14  *Fuqua v. Kenan Advantage Group, Inc.*, 2012 U.S. Dist. LEXIS

15      95852 (D. Or. Apr. 13, 2012)...................................................... 8

16  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987)...................... 8

17  *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 23 527 (E.D. Va. 1999)................ 7

18  *In re Jiffy Lube International Inc. Text Spam Litigation*, 847

19      F.Supp.2d 1253 (S.D. Cal. 2012).........................................11, 12, 13

20  *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) .................... 7, 8

21  *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014

22      WL 1878903 (C.D. Cal. May 9, 2014)........................................ 14

23  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614

24      (1985)................................................................................... 8

25  *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861 (10th Cir. 1999)................ 8

26  *Porter v. Dollar Fin. Grp., Inc.*, No. 2:14-1638 WBS AC, 2014 WL

27      4368892 (E.D. Cal. Sept. 2, 2014) ........................................... 12

28

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999)................................... 9

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr.*

    *Univ.*, 489 U.S. 468 (1989) ..................................................................... 7

*Wagner v. Discover Bank*, 2014 U.S. Dist. LEXIS 3682 (D. Colo.

    Jan. 10, 2014)................................................................................. 8

## STATUTES

Federal Arbitration Act, 9 U.S.C. et seq................................................. 6

Telephone Consumer Protection Act, 47 U.S.C. 227 et seq. .............10, 12, 13, 14

## Memorandum of Points and Authorities

### I.     Introduction

These Terms of Use (*"Terms"*) govern the access or use by you, an individual, from within the United States and its territories and possessions of applications, websites, content, products, and services (the *"Services"*) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries and affiliates (collectively, *"Uber"*).

Llaguno Decl., Exh. A at p. 3 (emphasis added).

The Services constitute a technology platform that enables users of Uber's mobile applications or websites provided as part of the Services (each, an *"Application"*) **to arrange and schedule transportation and/or logistics services with third party providers of such services, including independent third party transportation providers and third party logistics providers under agreement with Uber or certain of Uber's subsidiaries** (*"Third Party Providers"*). Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

*Id.* (emphasis added).

The strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

Defendant Uber Technologies Inc. (hereinafter "Uber" or "Defendant"), in bringing its Motion to Compel Arbitration, is trying to force Plaintiff Marisa Lainer (hereinafter "Plaintiff") to arbitrate under the terms of her consumer account, used to purchase and use Uber's ride services, which has no relation to the unwelcome and unrequested text messages recruiting her to apply for a job with Uber.  Uber

1  attempts to bypass this issue by arguing that what is arbitrable is a question for
2  arbitration and the court should look far and wide to find that Defendant's illegal
3  text messages fit within the scope of Plaintiff's consumer account and agreement.
4  But, this argument ignores the important role the court still plays in preventing
5  abuse through over broad interpretations of agreements.

6       Uber is attempting to use the Terms of Use and Privacy Policy consumers
7  agree to when they sign up for services as an Uber *passenger/customer* and the
8  arbitration clause contained within to force into arbitration claims arising from the
9  unrelated and unwelcome employment recruitments it sends to unwilling
10 consumers.  But, this proposed overbroad interpretation of its Terms of Use is
11 wrong.  Recruitments to apply for employment are not subject to the arbitration
12 clause because they are not related to the purchase, use, status, promotions, or any
13 other number of other appropriate messages Uber may have sent with regards to
14 consumers' use of its <u>Services</u> that would fall within the arbitration clause.

15      For these reasons, as described in greater detail herein, the Court should deny
16 Defendant's Motion to Compel Arbitration.

17 **II.   Facts**

18      **A. Plaintiff Received Texts Offering Employment**

19      This action arises from recruitment texts Defendant Uber sent to Plaintiff
20 Marisa Lainer recruiting her to become a driver for Uber.  Declaration of Marisa
21 Lainer in Support of Opposition at ¶ 4 ("Lainer Decl.").  First Amended Complaint,
22 Dkt. 16, at ¶ 9-14 ("FAC").  Both of these texts from Defendant stated in relevant
23 part, "Charlie is inviting you to drive with Uber! Sign up now and get up to $300
24 when you start driving. . ." Lainer Decl. ¶ 4.  FAC at ¶ 10 & 14.  These text messages
25 carried no readily apparent recruitment component, nor did they relate in any way
26 shape or form to Plaintiff's use of Uber services as a customer/passenger in an Uber
27 vehicle.  Plaintiff had never engaged with Defendant to be a potential driver or

28

requests information in regards to it or authorized to that nature.   Lainer Decl. at ¶ 5.  FAC at ¶ 21.  Plaintiff has, however, signed up for Uber's services on January 3, 2015 and has used Uber's application as a consumer to purchase ride services from Uber.  Lainer Decl. at ¶ 6.

Uber rests its argument in its Motion to Compel Arbitration on the premise that the Terms of Use and User Privacy Policy that Plaintiff agreed to while registering as a User for Uber encompass the two employment recruitment texts sent in this action.  Motion to Compel Arbitration, Dkt. 17 at p. 67 ("MTCA").

## B. Plaintiff Agreed To Uber's Terms Of Use And Privacy Policy As A User and Consumer, Not As A Driver

Defendant argues that Plaintiff in her FAC does not allege that the Arbitration Agreement is unenforceable due to unconscionability and thus the agreement was not oppressive nor was Plaintiff surprised by it.  Motion to Compel Arbitration, Dkt. 17, p. 13-14 ("MTCA").  Plaintiff, however, was very surprised by Defendant's attempts in its Motion to apply Plaintiff's agreement with Uber to use Defendant's services as a consumer as creating a sword to attack all potential lawsuits concerning ANY action done by Uber, including those that do not touch or concern the subject of the agreement.  Plaintiff does not contest that there exists a valid arbitration clause in an agreement between herself and Uber governing her use as a consumer of the transportation service, but strongly opposes Uber's assertion that the subject of this action falls within even the broad scope of that agreement.

In looking at the Arbitration Agreement contained within the Terms of Use that Plaintiff purportedly agreed to as a consumer and user of Uber's services, the key term of Services becomes relevant.

> The Arbitration Agreement cited to in the Terms of Use by Uber that form the foundation for their motion similarly specify it applies to the Service:  You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement,

interpretation or validity thereof or the <u>use of the Services</u> (collectively *"Disputes"*) will be settled by binding arbitration between you and Uber . . .

Llaguno Decl., Exh. A at p.8, § 6 (emphasis added).  When determining what the scope and definition of <u>Services</u> is, the Terms of Use and Privacy Policy provide separate terms and conditions that make clear it is referring to consumers purchasing and using transportation services:

> 1.      Services as Defined in the Terms of Use

> These Terms of Use (*"Terms"*) govern the access or use by you, an individual, from within the United States and its territories and possessions of applications, websites, content, products, and services (the *"Services"*) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries and affiliates (collectively, *"Uber"*).

Llaguno Decl., Exh. A at p. 3 (emphasis added).  While this initial definition of <u>Services</u> is somewhat vague, Uber's Terms of Use supplement it with a much more specific definition.

> **2. The Services**
> <u>The Services</u> constitute a technology platform that enables users of Uber's mobile applications or websites provided as part of the Services (each, an *"Application"*) **to arrange and schedule transportation and/or logistics services with third party providers of such services, including independent third party transportation providers and third party logistics providers under agreement with Uber or certain of Uber's subsidiaries** (*"Third Party Providers"*). Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

*Id.* (emphasis added).  Thus, <u>Services</u> is defined as the technology platform used by Users such as Plaintiff to arrange and schedule transportation.   This meaning is further cemented by the following provision in the Terms of Use:

> **Provision of the Services**
> You acknowledge that portions of the <u>Services</u> may be made available under Uber's various brands or request options associated with

transportation or logistics, including, without limitation, "Uber," "UberX," "UberXL," "UberBLACK," "UberSUV," and "UberLUX." You also acknowledge that the <u>Services</u> may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

*Id.* at p. 4. This section further shows that Uber's <u>Services</u> consists of the transportation services to coordinate and purchase rides and are contained under several different brand names based on the type of ride purchased.

2.   <u>Services as Defined and Used in the Privacy Policy</u>

In examining the Privacy Policy, Uber defines <u>Services</u> similarly to the Terms of Use as:

The Privacy Policy covers both our "online" (e.g., web and mobile services, including any web sites operated by us such as www.uber.com, m.uber.com, mobile applications, however accessed and/or used, whether via personal computers, mobile devices or otherwise) and "offline" (e.g., collection of data through mailings, telephone, or in person) activities owned, operated, provided, or made available by the Company. Our "online" and "offline" activities are collectively referenced as the "<u>Services</u>."

Llaguno Decl., Exh. B, p. 11 (emphases added). But in explaining how it may contact and use Plaintiff's data as part of the Terms of Use, the Terms and Conditions further explain that <u>Services</u> refers to the purchase and use of transportation coordination services and their associated issues.

"We use your information to closely monitor which features of the <u>Services</u> are used most, to allow you to view your trip history, store your credit card information on a secure page, view any promotions we may currently be running, rate trips, and to determine which features we need to focus on improving, including usage patterns and geographic locations to determine where we should offer or focus services, features and/or resources."
"We will send you strictly service-related announcements on rare

occasions when it is necessary to do so. For instance, if our <u>Services</u> are temporarily suspended for maintenance, we might send you an email. Generally, you may not opt out of these communications, which are not promotional in nature."

"[W]e may use your Personal Information or Use Information that we collect about you:

i.  To provide you with information or services or process transactions that you have requested or agreed to receive including to send you electronic newsletters, or to provide you with special offers or promotion materials . . . on behalf of us or third parties . . . .

iii.  To improve the <u>Services</u> or our services, to customize your experience with the <u>Services</u>, or to serve you specific content that is most relevant to you. . . .

iv.  To enable you to participate in a variety of the <u>Services'</u> features…

v.  To contact you with regard to your use of the <u>Services</u>[.]

Llaguno Decl., Exh. B, p. 15-16 (emphases added).  Uber's Privacy Policy and Terms of Use provide for Uber to contact Plaintiff with respect to her purchase and use of Uber's <u>Services</u>, the services consisting of transportation coordination.  These contacts may include to provide her updates as to the status of the service, to provide promotional material, and more categories related to the use of the service.

Uber's Terms of Use and Privacy Policy <u>do not</u> contain provisions providing for Uber to contact Plaintiff with regards to becoming a driver with Uber.  Indeed, Plaintiff asserts that she never agreed to become an Uber driver, or expressed any interest in doing so to Uber, nor did she understand the aforementioned Terms and Conditions to encompass such activity anyways.  Lainer Decl. ¶ 5, 7-10.  As alleged in the complaint, Uber texted Plaintiff and recruited her to apply for employment despite Plaintiff having never engaged with Defendant to be a potential driver nor ever requested Defendant send texts for that purpose.  FAC ¶ 10, 14, 21.

## III.   <u>The Court Should Deny Defendant's Motion Compel Arbitration</u>

### A. Legal Standard

Although the Federal Arbitration Act, 9 U.S.C. *et seq.* ("FAA") states "district courts shall direct parties to proceed on issues as to which an arbitration

agreement has been signed," the role of the Court is to first determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); quoting *Dean Witter Reynolds, Inc. v. Byard*, 470 U.S. 213, 218 (1985). The "basic objective" of courts in deciding whether a dispute is arbitrable is to ensure that "arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (internal quotations omitted).

The strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The FAA "does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). It follows that "the question of arbitrability – whether [an] agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *Id.* Further, the presumption in favor of arbitration "does not apply in resolving doubts respecting whether the parties have reached an agreement respecting what they will arbitrate." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 23 527, 533 (E.D. Va. 1999). The Court "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338-39 (2011) (quotations and citations omitted).

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the Court must] focus on the factual allegations in

the complaint rather than the legal causes of action asserted." *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987)).  The Court here must determine the scope issue, not an arbitrator.  *See, e.g., Fuqua v. Kenan Advantage Group, Inc.*, 2012 U.S. Dist. LEXIS 95852, at *28 (D. Or. Apr. 13, 2012) ("Normally, the court decides the scope and validity of an arbitration agreement, including whether it was unconscionable.").  *See also Wagner v. Discover Bank*, 2014 U.S. Dist. LEXIS 3682, at *13 (D. Colo. Jan. 10, 2014) (the court determined the scope of the arbitration clause despite language in the clause that the "scope of this arbitration provision" was subject to binding arbitration).  Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).  When doing so, the court must assume the truth of the allegations in plaintiff's complaint for the purposes of ruling on defendant's motion to compel arbitration. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1006 (9th Cir. 2005).

## B. The Services Agreed To By Plaintiff In the Uber Terms Of Use And Privacy Policy Do Not Touch The Employment Recruitment Text Messages At Issue In This Matter

Defendant attempts to take away the Court's important role as a gatekeeper by asserting that incorporation of the AAA Commercial Arbitration Rules into the consumer agreement between Uber and Plaintiff forces the Court to let the arbitrability of the issue be decided by an arbitrator. *Crooks v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2013 WL 6039399, at *6 (N.D. Cal. Nov. 8, 2013).  This disingenuously misstates the actual test applied which requires the Court to first determine "whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).[1]

---

[1] For reasons described herein, it plainly does not.

1  While the "relating to" language contained within the arbitration clause in the
2  consumer agreement between Uber and Plaintiff causes the Court to apply a
3  relatively broad interpretation of the contract, the contract must still "touch matters"
4  covered by the contract. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.
5  1999).

6  Examining the arbitration provision contained within the consumer user
7  agreement between Plaintiff and Defendant, it is clear that even under broad
8  interpretation the agreement does not cover Defendant's employment recruitment
9  communications in this matter as they do not relate to the <u>Services</u> Uber sells to
10  Plaintiff.

11  1. The "Related To" Language Cannot Be Construed To Cover
12  ALL Communications From Uber

13  Uber asserts that its arbitration agreement contained in the Terms of Use and
14  Privacy Policy Plaintiff agreed to when using Uber's services encompasses the
15  employment recruitment texts at issue in this matter, but this position over broadly
16  interprets the actual terms agreed to by Plaintiff in signing up.

17  This arbitration agreement specifically states:

18  "You agree that any dispute, claim or controversy arising out of or
19  relating to <u>these Terms</u> or the breach, termination, enforcement,
20  interpretation or validity thereof or the use of the <u>Services</u> (collectively
21  "*Disputes*") will be settled by binding arbitration between you and
22  Uber . . ."

23  Llaguno Decl., Exh. A at p. 8 (emphasis added).

24  The "<u>Services</u>" constitute the technology platform and services used by
25  consumers "to arrange and schedule transportation and/or logistics services."
26  Llaguno Decl., Exh. A at p. 3. Uber further reinforces this definition of "Services"
27  in describing ways in which it will use Plaintiff's information to improve Plaintiff's

28

use of its services to purchase transportation, such as allowing Plaintiff to "view any promotions we may currently be running, [and] rate trips," "send[ing] you strictly service-related announcements . . . [such as] if our Services are temporarily suspended for maintenance."  Llaguno Decl., Exh. B, p. 15-16.  Uber's Privacy Policy further provides that it may use Plaintiff's personal information to "provide you with information or services or process transactions that you have requested or agreed to receive . . . or to provide you with special offers or promotion materials," "[t]o improve the Services or our services," "[t]o enable you to participate in a variety of the Services' features," and "[t]o contact you with regards to your use of the Services."  *Id.* (emphasis added).

Uber's definition of "Services" is clearly meant to refer to a consumer's use of its application and technology for the sake of purchasing transportation services, and Plaintiff agrees that disputes arising from communications from Uber relating to the use of its services would fall within the scope of the arbitration clause.  But the communications at issue in this matter, and by extension, the Telephone Consumer Protection Act, 47 U.S.C. 27 *et seq.* ("TCPA"), claims at issue in Plaintiff's Class Action Complaint, are text messages recruiting Plaintiff to become an employee for Defendant and "[s]ign up now and get up to $300 when you start driving."  Lainer Decl. at ¶ 4.  FAC at ¶ 10 & 14.  This communication does not even "touch" Plaintiff's use of Defendant's services for purchasing transportation. It fits under none of the Terms of the consumer Terms of Use and Privacy Policy, even when interpreted broadly.  It is an unrelated attempt to recruit Plaintiff to apply for employment.

If the Court were to accept Uber's overly broad interpretation of its arbitration clause to include the employment recruitment at issue in this matter, then consumers in the future could expect all companies to permissibly send them employment offers in the future as they would be encompassed under those companies "services"

1    and thus be forced into arbitration.  An airline could send an offer to a traveler to
2    become a gate attendant when the traveler signs up for flight status updates.  An
3    online store could send a consumer who requests tracking information for his
4    purchase an offer to apply to work in its warehouse.  In reality, Uber's texts
5    recruiting Plaintiff to apply for employment are completely unrelated to the <u>Services</u>
6    it is permitted to contact Plaintiff about in regards to her consumer account with
7    them.

8                    a.    Uber's Texts Recruiting Plaintiff to Apply for Employment
9                          Are Completely Unrelated to the Arbitration Clause in the
10                         Consumer Terms of Use

11           The text messages Uber sent to Plaintiff recruiting her to apply for a position
12   were unrelated to the permissions and terms of the consumer Terms of Use and
13   Privacy Policy Plaintiff entered into when signing up to purchase and use Uber's
14   <u>Services</u>.  While Uber petitions the court in its Motion to look beyond the four
15   corners of the documents, it would sooner have to petition the court to look beyond
16   and fall off the four corners of the Earth to make its argument of relation fit.

17           The Court in ensuring the contract is enforced according to its terms and the
18   intent of the parties may use the "related to" language as a signal to look beyond the
19   four corners of the contract, but the interpretation still must somehow relate to the
20   terms of the contract.  *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS,
21   2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014).  To permit Uber's interpretation
22   of its Terms of Use as requiring arbitration for any claim a consumer of Uber may
23   bring, even when completely unrelated to the underlying agreement actually entered
24   into, would be akin to the "any and all disputes, controversies or claims" clause the
25   court held inoperative in *Jiffy Lube*.  *In re Jiffy Lube International Inc. Text Spam*
26   *Litigation,* 847 F.Supp.2d 1253 (S.D. Cal. 2012).

27           In *Jiffy Lube*, defendant sent a text message to plaintiff recruiting him to join
28

_____

**OPPOSITION TO MOTION TO COMPEL ARBITRATION, AND IN THE ALTERNATIVE, TO
DISMISS OR STAY THE CASE**
**-11-**

a discount club after plaintiff provided his phone number during an oil change. *Id.* The court found that this separate text message recruitment was separate from the oil change and arbitration clause contained within and thus not related and not subject to arbitration. *Id.* As in *Jiffy Lube*, Plaintiff provided Defendant with her phone number as part of purchasing and using Defendant's <u>Services</u>, and Defendant then sent Plaintiff. To the extent Uber would attempt to argue that <u>Services</u> should be construed broadly to include all communications it sends to anyone who has used its services for any reason, it would be an attempt to urge the court to construe the arbitration agreement narrowly enough to avoid invalidation, but broadly enough to encompass the claims at issues in this case and should be denied as it was in *Jiffy Lube*. *Id.*

Another California federal court has clearly drawn this distinction between previous agreements including arbitration clauses and unrelated actions that give rise to TCPA claims and are thus not subject to the claims. In *Porter*, the court found that while an arbitration agreement existed as to a different prior agreement plaintiff had with defendant, defendant's calls violated the TCPA because they were wrong calls for another account and thus unrelated to the underlying agreement and the arbitration agreement contained therein. *Porter v. Dollar Fin. Grp., Inc.*, No. 2:14-1638 WBS AC, 2014 WL 4368892, at *2 (E.D. Cal. Sept. 2, 2014). Similar to *Porter*, Uber is attempting to assert that its prior consumer agreement with Plaintiff in regards to providing its <u>Services</u> should force all of its communications with Plaintiff to fall within the arbitration clause. *Id.* The Court should find this similarly unconvincing and find that the recruitment texts are unrelated to the arbitration clause.

Further, while Uber may argue that there is a "but for" nature underlying Plaintiff's claims, this is not enough to establish that the claim arises out of or relates to a previous agreement. *Porter v. Dollar Fin. Grp., Inc.*, No. 2:14-1638 WBS AC,

1    2014 WL 4368892, at *2 (E.D. Cal. Sept. 2, 2014); *In re Jiffy Lube Int'l, Inc., Text*

2    *Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012). While "but for" Plaintiff

3    having previously provided her phone number to purchase Uber's <u>Services</u>, it may

4    not have had her information to send the unwanted recruitments to, this does not

5    cause those messages to arise out of relate to the previous agreement.[2]

6         Thus, the Court should find that the text messages recruiting Plaintiff to apply

7    for employment are unrelated to the arbitration clause within the Terms of Use and

8    Privacy Policy with regards to Uber's consumer <u>Services</u> and deny Defendant's

9    motion to compel arbitration.

10           b.      The TCPA Debt Collection Cases cited by Defendant are

11                   completely distinguishable.

12         Defendant presents multiple cases to try and support its position that its

13    employment recruitment texts must have fallen within the scope of the rider

14    arbitration clause, but these cases are completely distinguishable from the current

15    matter and instead show that Plaintiff's position is favored with regards to the TCPA

16    claim not being within the arbitration clause. In *Delgado*, plaintiff sued defendant

17    for a TCPA violation relating to defendant's use of an ATDS to contact him about

18    the repayment of a loan he had entered into. *Delgado v. Progress Fin. Co.*, No.

19    1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014).

20    Delgado had specifically signed a disclosure form stating that defendant could

21    contact him in regards to the underlying loan he had agreed to, including the

22    potential servicing, such that the "relating to" analysis did not even need a broad

23    interpretation. *Id.*

24         By contrast in this matter, Defendant's texts to Plaintiff recruiting her to

25    become a driver were not based on an underlying or previously existing agreement.

26

27    [2] This assumes that the reason Defendant was sending such recruitment texts to

28    Plaintiff was because she provided Uber her phone number as a customer. This is a fact that is yet unknown, and will arise during discovery.

Instead, Plaintiff's agreement to Defendant's Terms of Use and Privacy Policy only specifically encompass her use and purchase of Uber's <u>Services</u>. If Plaintiff had attempted to bring a TCPA claim in regards to text messages for promotions regarding the purchase of those <u>Services</u> or status updates, it would be analogous to *Delgado*. But she has not. Defendant is attempting to shoehorn its unwelcome and unwarranted employment recruitment into its agreement to provide <u>Services</u> and in doing so is attempting to fit a square peg into a round hole.

Defendant also heavily relies on *Koyoc* in support of its position that because of the broad "relating to" language, Plaintiff's claim must "touch matters" covered by the arbitration provision. *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014). But even the low bar requiring the provision "touch matters" still requires that the arbitration provision contain terms relevant to the asserted conduct. In *Koyoc*, which is factually similar to *Delgado*, plaintiff sued defendant for a TCPA violation arising out of defendant's attempts to collect on a debt for an underlying agreement on which plaintiff had become delinquent. *Id.*

Thus, once again, the court in applying the "broad" standard did not have to go far in concluding that attempts to collect on a contract are related to the contract. And, once again, it is clear that Plaintiff's claim in this matter is completely distinguishable from this holding as Defendant's employment recruitment text messages to her were not encompassed within the <u>Services</u> Defendant was providing to Plaintiff as a consumer of its transportation services. As such, the Court must find that Uber's agreement to sell Plaintiff transportation services does not encompass and is not related to the texts from Uber to Plaintiff recruiting her to apply for a job. Thus, the arbitration clause contained in the Terms of Use and Privacy Policy does not encompass the dispute at issue and Defendant's motion to compel arbitration must be denied.

1

## IV.    <u>Conclusion</u>

For the reasons set forth herein, Plaintiff humbly requests that the Honorable Court deny Defendant's Motion to Compel Arbitration and Motion to Stay or Dismiss this case.

Finally, if the Honorable Court is inclined to grant Defendant's Motion to compel on the grounds that these issues must be decided by the arbitrator, Plaintiff respectfully requests this matter be stayed pending the results of arbitration, as Plaintiff intends to put the issue before the arbitrator of whether the issue is arbitrable at all, as proposed by Defendant.

Dated: April 18, 2016            LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:    /s/ Todd M. Friedman
       Todd M. Friedman, Esq.
       Adrian R. Bacon, Esq.
       Attorneys for Plaintiffs

1

# <u>CERTIFICATE OF SERVICE</u>

2

3
Filed electronically on this 18th day of April, 2016, with:

4
United States District Court CM/ECF system

5

6
Notification sent electronically on this 18th day of April, 2016, to:

7
Honorable Judge Beverly Reid O'Connell
United States District Court

8
Central District of California

9

10
Tiffany Cheung
Adam Sevell

11
MORRISON & FOERSTER LLP

12
s/Todd M. Friedman

13
Todd M. Friedman, Esq.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28