1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone:  415.268.7000
4   Facsimile:   415.268.7522

5   ADAM SEVELL (CA SBN 266428)
    ASevell@mofo.com
6   KELSEY M. STRICKER (CA SBN 300955)
    KStricker@mofo.com
7   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
8   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
9   Facsimile:  213.892.5454

10  Attorneys for Defendant
    UBER TECHNOLOGIES, INC.

11

12

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16  MARISA LAINER, individually and        Case No. 15-CV-09925-BRO-MRW
    on behalf of all others similarly
17  situated,

18                      Plaintiff,          **REPLY IN SUPPORT OF
                                            DEFENDANT UBER
19            vs.                           TECHNOLOGIES, INC.'S MOTION
                                            TO COMPEL ARBITRATION AND
20  UBER TECHNOLOGIES INC.,                 DISMISS OR STAY LITIGATION**

21                      Defendant.

22                                          Date:  May 16, 2016
                                            Time: 1:30 p.m.
23
                                            Hon. Beverly Reid O'Connell
24                                          Courtroom 14

25

26

27

28

la-1316014

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................1

II.   THE ARBITRATION AGREEMENT ENCOMPASSES
      PLAINTIFF'S CLAIMS ......................................................1

      A.    Any Interpretation of the Terms and Conditions and Privacy
            Policy Must Be Submitted to Arbitration ...........................2

      B.    The Terms and Conditions and Privacy Policy Must Be
            Interpreted to Evaluate Plaintiff's Claims .........................3

      C.    The Court Should Compel Arbitration of TCPA Claims That
            Are Intertwined With the Underlying Contract ..................5

III.  EVEN IF THE SCOPE OF THE ARBITRATION AGREEMENT
      WAS AMBIGUOUS, AN ARBITRATOR MUST RESOLVE
      ARBITRABILITY ...............................................................7

IV.   CONCLUSION .................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)......................................................................................1, 2

*Athena Feminine Techs. Inc. v. Wilkes*,
    No. C 10-04868 SBA, 2011 WL 4079927 (N.D. Cal. Sept. 13, 2011)...............5

*Balar Equipment Corp. v. VT Leeboy, Inc.*,
    336 Fed. App'x 688 (9th Cir. 2009) ..................................................................2

*Baysand Inc. v. Toshiba Corp.*, No.
    15-cv-02425-BLF, 2015 WL 7293651 (N.D. Cal. Nov. 19, 2015) ....................8

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
    No. 12-CV-005797-SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014)............8

*Blau v. AT&T Mobility*,
    No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012)......................3

*Brown v. DirecTV, LLC*,
    No. CV 12-08382 DMG (Ex), 2013 WL 3273811
    (C.D. Cal. June 26, 2013)...................................................................................7

*Cayanan v. Citi Holdings, Inc.*,
    928 F. Supp. 2d 1182 (S.D. Cal. 2013) .............................................................7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000)............................................................................5

*College of the Sequoia Farms v. White Gold Assoc., Inc.*,
    No. 1:07-CV-00014 AWI NEW (WMW), 2007 WL 2022040
    (E.D. Cal. Jul. 9, 2007) .....................................................................................3

*Crook v. Wyndham Vacation Ownership, Inc.*,
    No. 13-CV-03669-WHO, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013)............8

*Delgado v. Progress Financial Co.*,
    No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282
    (E.D. Cal. May 1, 2014)..................................................................................5, 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004).............................................................................8

*Fuqua v. Kenan Advantage Group, Inc.*,
  No. 3:11-cv-01463-ST, 2012 WL 2861613 (D. Or. Apr. 13, 2012)....................7

*Galen v. Redfin Corp.*,
  Nos. 14-cv-05229-TEH, 14-cv-05234-TEH, 2015 WL 7734137
  (N.D. Cal. Dec. 1, 2015) .....................................................................................9

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
  847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...........................................................6, 7

*Khraibut v. Chahal*,
  No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016)............8, 9

*Koyoc v. Progress Fin. Co.*,
  No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903
  (C.D. Cal. May 9, 2014)..............................................................................2, 5, 6

*Krause v. Barclays Bank Del.*,
  No. 2:13-CV-01734 MCE-AC, 2013 WL 6145261
  (E.D. Cal. Nov. 21, 2013) ...................................................................................2

*Loewen v. Lyft, Inc.*,
  129 F. Supp. 3d 945 (N.D. Cal. 2015)............................................................8, 9

*McNamara v. Royal Bank of Scotland Group, PLC*,
  No. 11-cv-2137-L(WVG), 2012 WL 5392181 (S.D. Cal. Nov. 5, 2012)...........7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013).............................................................................8

*Porter v. Dollar Financial Group*,
  No. 2:14-1638 WBS AC, 2014 WL 4368892 (E.D. Cal. Sept. 2, 2014) ............6

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)............................................................................................7, 8

*Sherman v. RMH, LLC*,
  No. 13cv1986-WQH-WMc, 2014 WL 30318 (S.D. Cal. Jan. 2, 2014)..............7

iii

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

*Simula, Inc. v. Autoliv, Inc.*,

4

175 F.3d 716 (9th Cir. 1999)..............................................................5

5

*Tompkins v. 23andMe, Inc.*,

6

No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014)...................8

7

*Wagner v. Discover Bank*,

No. 12-cv-02786-MSK-BNB, 2014 WL 128372 (D. Colo. Jan. 13, 2014).........8

8

*Zenelaj v. Handybook Inc.*,

9

82 F. Supp. 3d 968 (N.D. Cal. 2015)............................................8, 9

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Plaintiff Marisa Lainer concedes "that there exists a valid arbitration clause in an agreement between herself and Uber[.]"  [ECF No. 23 at p. 3.]  She does ***not dispute*** that she is bound by the Arbitration Agreement in Uber's Terms and Conditions.  She does ***not challenge*** the validity of the Arbitration Agreement.  She also concedes that the Arbitration Agreement encompasses Uber's transmission of "promotional material" and other communications to Plaintiff, and that the Arbitration Agreement must be read broadly.

Plaintiff cannot sidestep her binding contract or overcome the strong presumption in favor of arbitration.  Her Arbitration Agreement extends to all claims "arising out of or relating to the [Terms and Conditions, including the Privacy Policy]" or the "interpretation or validity thereof," and the Privacy Policy specifies the types of communications Plaintiff consented to receive from Uber when she accepted the benefits of becoming an Uber user.  Because Plaintiff's TCPA claims are based solely on her subsequent receipt of two "recruitment" text messages allegedly containing "advertisements and/or promotional offers," Plaintiff's claims, at a minimum, "touch matters" related to the Terms and Conditions and Privacy Policy, and resolution of her claims requires an interpretation of those documents.

Even if there was any doubt about the scope of the Arbitration Agreement, the Agreement's scope must be decided by an arbitrator because the parties "clearly and unmistakably" delegated gateway issues of arbitrability to the arbitrator.  This case should be referred to arbitration on an individual basis.

## II.     THE ARBITRATION AGREEMENT ENCOMPASSES PLAINTIFF'S CLAIMS

The Federal Arbitration Act ("FAA") requires that a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T*

1  *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "[W]here an

2  arbitration clause applies to matters . . . 'arising out of or relating to' the agreement,

3  its application should be broadly construed."  *Krause v. Barclays Bank Del.*, No.

4  2:13-CV-01734 MCE-AC, 2013 WL 6145261, at *4 (E.D. Cal. Nov. 21, 2013).

5  "[I]n the absence of any express provision excluding a particular grievance from

6  arbitration, . . . only the most forceful evidence of a purpose to exclude the claim

7  from arbitration can prevail."  *Balar Equipment Corp. v. VT Leeboy, Inc.*, 336 Fed.

8  App'x 688, 689 (9th Cir. 2009).

9       "The party resisting arbitration bears the burden of showing that the

10  arbitration agreement . . . does not encompass the claims at issue."  *Koyoc v.*

11  *Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903, at *2

12  (C.D. Cal. May 9, 2014) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531

13  U.S. 79, 91-92 (2000)).  Plaintiff has not met her burden, and her claims fall

14  squarely within the definition of arbitrable "Disputes."

15              **A.    Any Interpretation of the Terms and Conditions and Privacy
                        Policy Must Be Submitted to Arbitration.**
16

17       Plaintiff spends most of her Opposition explaining why she believes her

18  claims do not arise out of or relate to her "use of [Uber's] Services."  [ECF No. 23

19  at pp. 7-10.]  This argument misses the mark.  The full definition of "Disputes" that

20  must be individually arbitrated includes: "any dispute, claim or controversy arising

21  out of or relating to":

22       (1) the Terms and Conditions, including the Privacy Policy **or**

23       (2) "the breach, termination, enforcement, interpretation or validity thereof"

24       **or**

25       (3) "the use of the Services."

26  [ECF No. 20, Exh. A at p. 8, § 6 (emphasis added).]  Plaintiff improperly ignores

27  the first two categories, despite the fact that Plaintiff's obligation to arbitrate arises

28  from those categories—her claims arise out of and are related to the Terms and

1  Conditions and Privacy Policy and the interpretation or validity of the provisions

2  contained therein.[1]  Contrary to Plaintiff's arguments, Uber's motion does **not** rely

3  on Plaintiff's obligation to arbitrate claims arising out of Plaintiff's use of Uber's

4  Services.

5          Plaintiff's subjective belief that her Arbitration Agreement only covers

6  claims based on her ridership and her failure to read the agreement do not narrow

7  its scope or render it unenforceable.  [ECF No. 23-1 at ¶ 8]; s*ee College of the*

8  *Sequoia Farms v. White Gold Assoc., Inc.*, No. 1:07-CV-00014 AWI NEW

9  (WMW), 2007 WL 2022040, at *4 (E.D. Cal. Jul. 9, 2007) (rejecting plaintiffs'

10  argument that a party may rely on its subjective belief that their claims do not fall

11  within the scope of the arbitration clause); *Blau v. AT&T Mobility*, No. C 11-00541

12  CRB, 2012 WL 10546, at *4-5 (N.D. Cal. Jan. 3, 2012) (rejecting claim that

13  plaintiffs did "not recall" seeing terms).

14          **B.    The Terms and Conditions and Privacy Policy Must Be**
15  **Interpreted to Evaluate Plaintiff's Claims.**

16          Plaintiff acknowledges that the Court must focus on the factual allegations in

17  the complaint in deciding a motion to compel arbitration.  [ECF No. 23 at pp. 7-8.]

18  The complaint is based solely on two allegedly "unsolicited text messages" from

19  Uber that purportedly included "advertisements and/or promotional offers[.]"[2]

20  [ECF No. 16, ¶¶ 9, 25.]  However, Plaintiff concedes that the Privacy Policy allows

21  _____

22          [1] The Terms and Conditions plainly are not limited to a consumer's use of
Uber's services to obtain rides.  In addition to covering communications with
23  consumers about various issues, they encompass, for example:  (i) restrictions on
the use of Uber's intellectual property; (ii) use of third party services and content;
24  (iii) information collected from job applicants; (iv) use of information for internal
business purposes and data analytics; (v) use of Uber's name and likeness; and
25  (vi) personal information and data security.  [ECF No. 20, Exh. A at pp. 4, 9, 10;
Exh. B at pp. 11, 14-20.]

26          [2] Uber disputes the allegations in the complaint and denies liability under the
TCPA, but acknowledges that, for purposes of this motion, the Court evaluates the
27  propriety of arbitration in the context of Plaintiff's allegations.

28

Uber to send her "special offers or promotional material." [ECF No. 23 at pp. 2, 9, 10, 14 (appropriate text messages Uber may have sent include those related to users' purchase, use, status, or promotions).] Given that the Privacy Policy expressly permits Uber to send the alleged "promotional material" at the core of Plaintiff's claims, the two text messages at issue fall squarely within the Arbitration Agreement Plaintiff concedes is enforceable against her. [ECF No. 23 at p. 3.]

Plaintiff's Opposition now suggests — contrary to the express allegations in her FAC — that "recruitment" messages are not "advertisements or promotional offers." [ECF No. 23 at p. 6.] Even if the Court were to consider Plaintiff's contradictory attempt to argue around the Arbitration Agreement, the messages at issue are still permitted by the provisions allowing Uber to send communications to Plaintiff to "improve the Services or [Uber's] services." [ECF No. 20, Exh. B at p. 16, § 2.] The Terms and Conditions specifically define Uber's services as the provision of a technology platform that enables its users to arrange and schedule transportation from third party transportation providers. [ECF No. 20, Exh. A at p. 1.] This definition necessarily recognizes that Uber's technology platform depends on a sufficient number of drivers willing to use the App to provide transportation services. Accordingly, Uber can "improve the Services or [its] services" by seeking out additional drivers to use its App. Thus, even if Plaintiff is permitted to contradict the express allegations in her complaint, the messages at issue are still specifically contemplated by the Privacy Policy. Particularly in light of the multiple provisions permitting the alleged communications, there is ***no*** evidence of any intention by the parties to exclude Plaintiff's TCPA claims from

1    arbitration.[3]

2         Even if there were room for doubt, "any doubts concerning the scope of

3    arbitrable issues should be resolved in favor of arbitration."  *Simula, Inc. v. Autoliv,*

4    *Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

5         **C.    The Court Should Compel Arbitration of TCPA Claims That Are**
         **Intertwined With the Underlying Contract.**
6

7         Courts routinely compel arbitration where, as here, the alleged TCPA

8    violation is intertwined with the underlying contract.[4]  [ECF No. 17 at pp. 12-13.]

9    Plaintiff ignores the overwhelming weight of authority cited by Uber, and instead

10   attempts to distinguish only two of the decisions.  [ECF No. 23 at p. 13-14.]  Even

11   so, Plaintiff fails to distinguish those decisions, as they are both squarely on-point.

12        In *Delgado v. Progress Financial Co.*, the plaintiff signed both an arbitration

13   agreement and an underlying disclosure form that "identified various methods

14   [defendant] anticipated it might employ to communicate with [plaintiff] about his

15   account."  No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at *5 (E.D. Cal. May

16   1, 2014).  After the defendant placed telephone calls to the plaintiff about his

17   account, plaintiff sued under the TCPA.  The court compelled arbitration because

18   plaintiff had agreed to arbitrate any claims "arising out of or related in any way to"

19   the loan agreement, including the disclosure form that specifically authorized

20   certain types of communications.  *Id.* at *5-6.  Similarly, in *Koyoc v. Progress*

21        [3] Uber believes the alleged communications are also permitted by the
22   provision allowing communications to "provide you with information . . . that you
     have requested or agreed to receive . . . ." [ECF No. 20, Exh. B at p. 16, § 2]
23   because Uber's records indicate that Plaintiff agreed to receive them.  Although
     Plaintiff alleges otherwise, Uber will challenge this allegation when Plaintiff's
24   claims are resolved on the merits.

25        [4] Courts apply the same analysis to non-TCPA cases, where the asserted
     claims or defenses are independent from, but intertwined with, the underlying
26   contract.  *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th
     Cir. 2000); *Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868 SBA, 2011 WL
27   4079927, at *12 (N.D. Cal. Sept. 13, 2011) (dispute touched arbitration clause in a
     *separate* agreement that was executed after the relevant contract, because the
28   relevant contract was "intertwined" with the parties' business relationship).

1    *Financial Co.*, the court compelled arbitration of plaintiff's TCPA claims because
2    the plaintiff agreed to arbitrate claims "arising out of or related in any way to" the
3    underlying loan agreement, including the consent form that specifically authorized
4    certain types of communications.  No. CV 13-09165-RSWL (AGRx), 2014 WL
5    1878903, at *5 (C.D. Cal. May 9, 2014).

6         Here, as in *Delgado* and *Koyoc*, Plaintiff agreed to arbitrate claims "arising
7    out of or relating to" the underlying contract—the Terms and Conditions, including
8    the Privacy Policy.  The Privacy Policy, like the *Delgado* and *Koyoc* disclosure and
9    consent forms, specifically identifies the various ways Uber may communicate with
10   a user such as Plaintiff.  [ECF No. 20, Exh. B at pp. 15-16, § 2.]  Whether the text
11   messages at issue exceeded the scope of permissible communications will require
12   an interpretation of the underlying contractual language.  As in *Delgado* and *Koyoc*,
13   Plaintiff's TCPA claims must be arbitrated.

14        The inapposite cases cited by Plaintiff do not change this result.  [ECF No. 23
15   at pp. 11-13.]  In *Porter v. Dollar Financial Group*, the court declined to compel
16   arbitration where plaintiff's claims "[arose] from calls to collect an unrelated third
17   party's debt with defendants."  No. 2:14-1638 WBS AC, 2014 WL 4368892, at *2
18   (E.D. Cal. Sept. 2, 2014).  Here, by contrast, Plaintiff does not claim she received
19   texts related to a different user's Uber account.

20        Likewise, this case is not *Jiffy Lube*.  In *In re Jiffy Lube Int'l, Inc., Text Spam*
21   *Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), the plaintiff signed an arbitration
22   agreement as part of a one-time oil change.  *Id.* at 1263.  The arbitration clause
23   encompassed "any and all disputes, controversies or claims between Jiffy Lube®
24   and [the plaintiff]."  *Id.* at 1262-63.  Plaintiff's agreement with Jiffy Lube regarding
25   her oil change transaction did not contain any provisions addressing Jiffy Lube's
26   communications with her at all, yet Jiffy Lube later sent her a text regarding Jiffy
27   Lube's discount club.  *Id.* at 1263; *see also In re Jiffy Lube Int'l, Inc., Text Spam*
28   *Litig.*, No. 3:11-md-02261-JM-JMA, ECF No. 14-5.  The court declined to compel

arbitration because the arbitration provision purported to cover all claims between the parties, including those arising from "a completely separate incident." *Id.* at 1263.

The Arbitration Agreement here is far narrower.  It does not purport to govern *every* dispute between the parties.  Additionally, unlike the one-time transaction in *Jiffy Lube*, the Terms and Conditions and Privacy Policy in this case contemplate an ongoing relationship between Plaintiff and Uber.  Finally, the Arbitration Agreement does not require arbitration of claims arising from an incident completely separate and unrelated to the underlying contract.  Plaintiff's claims here relate to permissible communications with Plaintiff, which are expressly addressed in the Privacy Policy (unlike the Jiffy Lube agreement).  Based on similar distinguishing facts, several courts have declined to follow *Jiffy Lube*. *See Sherman v. RMH, LLC*, No. 13cv1986-WQH-WMc, 2014 WL 30318, at *9 (S.D. Cal. Jan. 2, 2014); *Brown v. DirecTV, LLC*, No. CV 12-08382 DMG (Ex), 2013 WL 3273811, at *5-6 (C.D. Cal. June 26, 2013); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013); *McNamara v. Royal Bank of Scotland Group, PLC*, No. 11-cv-2137-L(WVG), 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012).[5]

**III.   EVEN IF THE SCOPE OF THE ARBITRATION AGREEMENT WAS AMBIGUOUS, AN ARBITRATOR MUST RESOLVE ARBITRABILITY.**

Plaintiff does not meaningfully challenge the parties' "clear and unmistakable" intention to delegate gateway questions of arbitrability to the

---

[5] Plaintiff suggests that if the Court enforces the Arbitration Agreement according to its terms, the Court would give license to any company to send any communications to any consumers.  [ECF No. 23 at pp. 10-11.]  This overreaching speculation ignores the contract-specific nature of the Court's analysis and the specific provisions to which *Plaintiff* agreed.  Plaintiff's Arbitration Agreement does not govern any other company's relationship or communications with its users, but its plain terms require individual arbitration of the Plaintiff's claims *in this case*.

arbitrator.[6] [ECF No. 17 at pp. 10-11]; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

The Arbitration Agreement expressly incorporates the AAA Rules, which delegate threshold questions regarding "the existence, scope, or validity of the arbitration agreement" to the arbitrator. [ECF No. 20, Exh. A at p. 8, § 6.][7] "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2013 WL 6039399, at *6 (N.D. Cal. Nov. 8, 2013); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 12-CV-005797-SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014).[8]

---

[6] *Fuqua v. Kenan Advantage Group, Inc.*, No. 3:11-cv-01463-ST, 2012 WL 2861613 (D. Or. Apr. 13, 2012) was not decided under the FAA and does not even address the scope of the arbitration agreement at issue. At most, it cites the unremarkable position that, when there is no evidence of intent to the contrary, the court should decide threshold questions of arbitrability.

[7] The out-of-circuit *Wagner v. Discover Bank*, No. 12-cv-02786-MSK-BNB, 2014 WL 128372, at *4-5 (D. Colo. Jan. 13, 2014) decision does not hold that a court may determine the scope of an arbitration clause despite contractual language to the contrary. [ECF No. 23 at p. 8.] In fact, the court explicitly recognized that a court does ***not*** decide arbitrability where there is "clear[] and unmistakabl[e]" intent to delegate that question to the arbitrator. *Id.* at *5 n.5. The *Wagner* arbitration provision allowed either party to **elect** to arbitrate any issue, including arbitrability. *Id.* There was no "clear and unmistakable" intent because neither party exercised its right to submit the question of arbitrability to arbitration. Here, in contrast, there is a "clear and unmistakable" intent to delegate.

[8] In *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682, 2014 WL 2903752, at *10 (N.D. Cal. June 25, 2014), the district court declined to follow this rule where there were "multiple layers of ambiguity about which AAA rules govern" and where the plaintiff was not asked to view or accept the terms. That is not the case here [ECF No. 17 at pp. 8-10], and several courts have declined to follow *Tompkins. See, e.g., Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973-975 (N.D. Cal. 2015); *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *5-6 (N.D. Cal. Mar. 18, 2016); *Baysand Inc. v. Toshiba Corp.*, No. 15-cv-02425-BLF, 2015 WL 7293651, at *5-6 (N.D. Cal. Nov. 19, 2015).

1    "If the parties clearly and unmistakably assign the arbitrability question to

2    the arbitrator, the court should perform a second, more limited inquiry to determine

3    whether the assertion of arbitrability is 'wholly groundless.'" *Loewen v. Lyft, Inc.*,

4    129 F. Supp. 3d 945, 954 (N.D. Cal. 2015).  The Arbitration Agreement's broad

5    "arising out of or relating to language" and the Privacy Policy's provisions

6    governing the very communications at issue place Plaintiff's claims squarely within

7    her binding Arbitration Agreement. *Id.* at 965-66; *see also Zenelaj*, 82 F. Supp. 3d

8    at 975 ("The arbitration provision in this case is broad, providing the arbitration of

9    'any dispute, controversy or claim related to this Agreement.' . . . A review of the

10   complaint does not foreclose the possibility that Plaintiffs' claims relate to the

11   Agreement."); *see also Khraibut*, 2016 WL 1070662, at *7; *Galen v. Redfin Corp.*,

12   Nos. 14-cv-05229-TEH, 14-cv-05234-TEH, 2015 WL 7734137, at *11 (N.D. Cal.

13   Dec. 1, 2015).

14        Even if there was any ambiguity about whether the communications at issue

15   fall within the Arbitration Agreement, the case must still be referred to individual

16   arbitration to allow the arbitrator to determine arbitrability.

## IV.   CONCLUSION

18        For the reasons set forth above and in Uber's motion, Uber respectfully

19   requests that the Court compel Plaintiff to individually arbitrate her claims and

20   dismiss, or alternatively, stay this action.

21

22   Dated:  May 2, 2016              MORRISON & FOERSTER LLP

23

24                                   By:   /s/ Tiffany Cheung
                                           Tiffany Cheung
25
                                     *Attorneys for Defendant*
26                                   **UBER TECHNOLOGIES, INC.**

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 15-cv-09925-BRO-MRW

1

## CERTIFICATE OF SERVICE

2          The undersigned hereby certifies that on the 2nd day of May, 2016, the

3     foregoing document was filed electronically on the CM/ECF system, which caused

4     all CM/ECF participants to be served by electronic means.

5

6     Dated:  May 2, 2016                    MORRISON & FOERSTER LLP

7

8                                     By:    /s/ Tiffany Cheung
                                            Tiffany Cheung
9
                                            *Attorneys for Defendant*
10                                          **UBER TECHNOLOGIES, INC.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28