LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-09925-BRO (MRWx)** | Date | May 11, 2016 |
|---|---|---|---|
| Title | **MARISA LAINER V. UBER TECHNOLOGIES, INC.** | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Petitioners: | Attorneys Present for Respondent: | |
| Not Present | Not Present | |

**Proceedings:**   (IN CHAMBERS)

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION [17]**

**I.    INTRODUCTION**

Pending before the Court is Defendant Uber Technologies, Inc.'s ("Defendant" or "Uber") Motion to Compel Arbitration and Dismiss or Stay Litigation.  (Dkt. No. 17.)  After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for resolution without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court **GRANTS** Defendant's Motion.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Factual Background**

Plaintiff Marisa Lanier ("Plaintiff"), an individual residing in California, (First Am. Compl. ("FAC") ¶ 4), alleges that, on November 9, 2016, she received two unsolicited text messages from Defendant, (FAC ¶¶ 9, 10, 14, 19).  According to Plaintiff, the messages were "spam advertisements and/or promotional offers."  (FAC ¶ 9.)  The first text message stated, "Charlie is inviting you to drive with Uber!  Sign up now and get up to $300 when you start driving: http://ubr.to/1OzMxRh."  (FAC ¶ 10.)  The second text message contained the same message, but included a slightly different URL.  (*See* FAC ¶ 14.)

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

Plaintiff alleges that prior to November 9, 2016, she "had never engaged with Defendant to be a potential driver nor had [she] ever requested Defendant to send auto texts for that purpose." (FAC ¶ 21.) She also avers that she "did not provide Defendant or its agents with prior express consent to receive unsolicited text messages." (FAC ¶ 25.) Plaintiff did, however, agree to Defendant's Terms and Conditions, as well as its Privacy Policy, when she signed up for Uber's "ride sharing application" in January 2015. (Decl. of Marisa Lainer ("Lainer Decl.") (Dkt. No. 23-1) ¶¶ 6–7.) The Terms and Conditions contained an arbitration agreement, which provides as follows:

> You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration between you and Uber, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding. Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of these Terms.

(*See* Decl. of Tipper Llaguno ("Llaguno Decl.") ¶ 3, Ex. A at 8.) It also provides that "[t]he arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes," and that "[t]he Federal Arbitration Act will govern the interpretation and enforcement of" the arbitration agreement. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

The Terms and Conditions also include a provision regarding text messaging, stating that "[b]y creating an Account, you agree that the Services may send you informational text (SMS) messages as part of the normal business operation of your use of the Services." (*Id.* at 5.) It also includes language permitting Uber to "provide certain users with promotional offers and discounts." (*Id.* at 6.)

### B. Procedural Background

On December 28, 2015, Plaintiff initiated this class action by filing her Original Complaint with this Court. (Dkt. No. 1.) On March 4, 2016, Plaintiff filed her First Amended Complaint ("FAC"), the operative complaint in this action. (Dkt. No. 16.) Plaintiff alleges two claims against Defendant: (1) a negligent violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, (FAC ¶¶ 33–36); and, (2) a willful violation of the TCPA, 47 U.S.C. § 227 *et seq.*, (FAC ¶¶ 37–40). (*Id.*)  Plaintiff seeks to represent a class "of all persons within the United States who received any unsolicited text messages and/or any other unsolicited text messages from Defendant without prior express consent." (FAC ¶ 28.)

On March 21, 2016, Defendant filed the instant Motion to Compel Arbitration. (Dkt. No. 17 (hereinafter, "Mot.").)  After the Court granted the parties' stipulation to amend the briefing schedule, (Dkt. No. 22), Plaintiff timely opposed Defendant's Motion on April 18, 2016, (Dkt. No. 23 (hereinafter, "Opp'n")).  Defendant timely replied on May 2, 2016. (Dkt. No. 24 (hereinafter, "Reply").)

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  Additionally, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Court's role under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)). "While the first question is a matter of contract interpretation governed by state law without any presumption in favor of arbitrability, the second question falls under the [FAA's] clear policy favoring arbitration." *Platte River Ins. Co. v. Dignity Health*, No. C-12-2356 EMC, 2013 WL 1149656, at *4 (N.D. Cal. Mar. 19, 2013).

If a valid agreement exists and the dispute in question falls within the scope of the agreement, then the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130. The court must also stay any further proceedings until the arbitration has been completed. *See* 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

## IV.    DISCUSSION

Defendant's principally contends that the arbitration agreement, to which Plaintiff agreed to be bound by accepting Defendant's Terms and Conditions, requires Plaintiff to submit the instant dispute to arbitration. (Mot. at 1–2.) In her Opposition, Plaintiff concedes "that there exists a valid arbitration clause in [the] agreement between herself and Uber." (Opp'n at 3.) Plaintiff's sole argument against Defendant's Motion is that her dispute falls outside the scope of the arbitration agreement. Specifically, because the text messages she received recruited her to become an Uber driver, whereas the arbitration agreement covers only disputes arising out Defendant's "services," which, according to Plaintiff, involves only Plaintiff's purchasing transportation through Defendant's application. (Opp'n at 8–15.) In reply, Defendant argues that the Terms and Conditions specifically permit Defendant to send Plaintiff "promotional offers" via text message, and the text messages at issue were just that—an offer for Plaintiff to receive up to $300 if she became an Uber driver. (Reply at 3–5.)

As discussed above, the Court must engage in a two-part inquiry in deciding whether to grant Defendant's Motion. *Chiron*, 207 F.3d at 1130. However, Plaintiff concedes the first issue—whether a valid agreement to arbitrate exists. *See id.*; (*see also* Opp'n at 3; Lainer Decl. ¶ 7.) Accordingly, the Court will address only the second of

Case 2:15-cv-09925-BRO-MRW Document 25 Filed 05/11/16 Page 5 of 7 Page ID #:190

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

*Chiron*'s two-part test—whether the agreement encompasses the dispute at issue. *Chiron*, 207 F.3d at 1130.

"The preference for arbitration is particularly strong when the arbitration clause is broad." *Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). "Clauses requiring arbitration of claims 'arising out of or relating to' a contract are considered broad." *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (terming as "broad" an arbitration clause covering "any controversy or claim arising out of or relating to this Agreement, or the breach thereof")). Defendant's arbitration agreement provides that the parties must submit to arbitration "any dispute, claim or controversy *arising out of or relating to* these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services." (Llaguno Decl. ¶ 3, Ex. A at 8 (emphasis added).) Accordingly, the strong preference for arbitration applies to Defendant's arbitration agreement.

"The threshold for arbitrability is not high." *Homestake Lead*, 282 F. Supp. 2d at 1138 (citing *Simula*, 175 F.3d at 719). "To trigger an arbitration requirement, the movant's factual allegations need only 'touch matters' covered by the contract containing the arbitration clause." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) (noting that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability")). Here, the Court concludes that Plaintiff's factual allegations do, in fact, "touch matters" covered by the arbitration clause.

As previously discussed, Defendant's arbitration agreement covers any dispute related to the Terms and Conditions, as well as to Plaintiff's use of Defendant's "services." (*See* Llaguno Decl. ¶ 3, Ex. A at 8.) Plaintiff generally limits her discussion to whether her dispute is related to Defendant's "services," as defined in the Terms and Conditions and Privacy Policy. (Opp'n 4–13.) According to Plaintiff, because Defendant's services are limited to "transportation coordination," and given that her dispute arises from Defendant's alleged employment solicitation, the instant dispute is unrelated to the arbitration agreement. (*See id.*) However, this narrow interpretation fails to consider the many provisions in the Terms and Conditions and Privacy Policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

indicating that Defendant's text messages are within the scope of the arbitration agreement.

For example, the Terms and Conditions specifically permit Defendant to send Plaintiff text messages. (Llaguno Decl. ¶ 3, Ex. A at 5.) They also provide that Defendant may send its consumers promotional offers and discounts. (*Id.* at 8.) The Court agrees with Defendant that the text messages Defendant sent to Plaintiff were promotional in nature, as they offered Plaintiff up to $300 if she agreed to become an Uber driver. (*See* FAC ¶¶ 10, 14.) Accordingly, considering the breadth with which the Court must interpret the arbitration agreement's scope, *Homestake Lead*, 282 F. Supp. 2d at 1138, and the FAA's "clear policy favoring arbitration," *Platte River Ins.*, 2013 WL 1149656, at *4, the Court concludes that Plaintiff's dispute falls within the arbitration agreement's purview.

The Court is unpersuaded by Plaintiff's argument that the arbitration agreement does not apply to the instant dispute because it is limited to Defendant's transportation services, as opposed to its alleged employment solicitations. (Opp'n at 8–13.) Even accepting this argument as true, it fails to establish that Plaintiff's dispute eludes the arbitration agreement's reach, as the text messages were "related to" Defendant's transportation coordination services because they encouraged Plaintiff to expand her use of Defendant's application to include participating in the transportation services as a driver, rather than just a passenger. Both uses of Defendant's application utilize Defendant's "services"—to facilitate the arranging and scheduling of transportation between drivers and passengers. (*See* Llaguno Decl. ¶ 3, Ex. A at 3.) Accordingly, the Court concludes that, even assuming the arbitration agreement could apply only if the disputed conduct related to Defendant's "services," Plaintiff's dispute still falls within the scope of the arbitration agreement.[1]

---

[1] The Court agrees with Defendant that the cases upon which Plaintiff relies are not instructive here. As Defendant points out, in *Porter v. Dollar Financial Group*, the court declined to compel arbitration where the plaintiff's claims arose "from calls to collect an unrelated third party's debt with defendants." No. 2:14-1638 WBS AC, 2014 WL 4368892, at *2 (E.D. Cal. Sept. 2, 2014). The instant action is distinguishable, as Plaintiff does not claim to have received text messages related to a different consumer's Uber account. Further, Plaintiff's reliance on *In re Jiffy Lube International, Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), is also inapposite. In that case, the plaintiff signed an arbitration agreement with the defendant as part of a contract for an oil change, and when the defendant

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-09925-BRO (MRWx) | Date | May 11, 2016 |
|---|---|---|---|
| Title | MARISA LAINER V. UBER TECHNOLOGIES, INC. | | |

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Dismiss or Stay Litigation.

## V.     CONCLUSION

Given Plaintiff's concession that the arbitration agreement is valid, and because Plaintiff's dispute falls within the scope of the arbitration agreement, the Court **GRANTS** Defendant's Motion to Compel.  The Court hereby **STAYS** this action pending the arbitration of Plaintiff's claims.  *See* 9 U.S.C. § 3.  The Court further **ORDERS** that this action be removed from the Court's active caseload until further application by the parties or Order of this Court.  In order to permit the Court to monitor this action, the Court orders the parties to file periodic status reports.  The first such report is to be filed **by 4:00 p.m. on Thursday, June 30, 2016**, unless the stay is lifted.  The parties shall file successive reports **every ninety (90) days thereafter**.  Each report must indicate on the face page the date on which the next report is due.  All pending calendar dates, including the hearing set for Monday, May 16, 2016, are hereby **VACATED**.  This Court retains jurisdiction over this action and this Order shall not prejudice any party to this action.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |

---

later sent the plaintiff text messages as part of a marketing campaign, the plaintiff sued under the TCPA. *Jiffy Lube*, 847 F. Supp. 2d at 1262–63.  In declining to compel arbitration, the court noted that the oil-change contract was unrelated to the text messages offering the plaintiff a membership with Jiffy Lube's discount club. *Id.* at 1263.  However, the oil-change contract in *Jiffy Lube* did not contemplate Jiffy Lube's future communications with Plaintiff.  By contrast, the arbitration agreement in the instant action specifically applies to all disputes arising out of and related to the Terms and Conditions, and the Terms and Conditions expressly state that Defendant may send its consumers text messages.  Thus, unlike *Jiffy Lube*, the arbitration agreement here encompasses the disputed conduct.